285 P.3d 972

Earl GELLER and Joyce Geller, as Co–Trustees of the Geller Family Trust; Michael F. Ziegler, a married man; Robert S. Aronson, a married man; Joan S. Brisk, a married woman; Jack Lipton, a married man; and Gerald B. Jackson and Betty S. Jackson, husband and wife, Plaintiffs/Appellees,

v.

Brian D. LESK, Defendant/Appellant.

No. 1 CA–CV 11–0383.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 25, 2012.

Jeffrey S. Kaufman, Ltd. By Jeffrey S. Kaufman, Scottsdale, Attorneys for Appellees.

The Frutkin Law Firm, PLC By Jonathan B. Frutkin, and Shannon E. Hennessey, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Defendant/appellant Brian D. Lesk ("Lesk") appeals from the amount of attorneys' fees awarded to plaintiff/appellees Earl Geller and Joyce Geller, as co-trustees of the Geller Family Trust, Michael F. Ziegler, Robert S. Aronson, Joan S. Brisk, Jack Lipton, Gerald B. Jackson, and Betty S. Jackson (collectively "the Geller Group"). Lesk argues that the trial court erred in awarding an amount based on a contingency agreement rather than based on a reasonable rate and the amount of time actually expended. We

vacate the fee award and remand for further proceedings because the award was based on a contingency fee agreement which was not facially reasonable and not supported by adequate evidence of reasonableness under *McDowell Mountain Ranch Community v. Simons*, 216 Ariz. 266, 270, ¶ 16, 165 P.3d 667, 671 (App.2007).

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The Geller Group sued Lesk for breach of contract to recover the balance owed on a promissory note. After several months of litigation, the superior court granted the Geller Group summary judgment and awarded it $380,000 in principal, $320,394.92 in late charges, penalties and interest on the note, reasonable attorneys' fees, costs, and interest on the judgment.

¶ 3 The Geller Group sought attorneys' fees under Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003) and pursuant to a paragraph in the promissory note titled "Lender's Rights." The promissory note provided that in the event of default on the note, Lesk would pay the costs of collecting on the note, including attorneys' fees.[1] In seeking to collect on the note, the Geller Group entered into a contingency fee agreement with an attorney which provided counsel would be entitled to a fee equal to twenty-five percent of the total amount of the judgment. Accordingly, the Geller Group requested a $175,098.73 fee award. Alternatively, the Geller Group sought fees based on an hourly rate. In the affidavit supporting the application, the Geller Group's attorney stated that he believed the contingency fee requested, or in the alternative, his hourly rate of $300, was reasonable. He also stated that he did not keep time slips or otherwise contemporaneously keep a record of the time expended, but he believed he spent in excess of 100 hours on the case.

¶ 4 Lesk argued the amount requested was unreasonable, noting that if the Geller Group's counsel spent approximately 100 hours working at his stated hourly rate of $300 per hour, the fee award would be only $30,000. Lesk also noted that his counsel had spent a total of 50.2 hours on the case, and that the Geller Group's counsel would have had to spend approximately 583 hours at his stated hourly rate to equal the amount of fees requested. Lesk asserted that evidence of reasonableness was required, even in contingency fee cases. He argued that he was obligated to pay reasonable fees under A.R.S. § 12–341.01, but was not bound to the amount agreed between the Geller Group and its counsel. Lesk proposed that he pay no more than $15,000 in fees or the equivalent of approximately fifty hours of work at the rate of $300 per hour.

¶ 5 In reply, the Geller Group argued that if the court was inclined to award fees based on the amount of time expended, the court should consider the contingency fee arrangement and multiply the reasonable hourly fee multiple times to account for the risk involved in such an agreement.

¶ 6 The court awarded the Geller Group $175,098.73 in attorneys' fees, the full amount requested. Lesk filed a timely notice of appeal. This court has jurisdiction pursuant to A.R.S. § 12–2101(A)(1) (Supp.2011).

## DISCUSSION

¶ 7 Lesk agrees that the Geller Group is entitled to an award of fees, but argues that any fees recovered under A.R.S. § 12–341.01 must be reasonable, that the lodestar method[2] is the presumptive method

---

1. **LENDER'S RIGHTS.** Upon default, ... Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including ... appeals, and any anticipated post-judgment collection services.

2. Under the lodestar method, the number of hours expended is multiplied by a reasonable rate of compensation. *Kadish v. Ariz. State Land Dep't*, 177 Ariz. 322, 331, 868 P.2d 335, 344 (App.1993). "The 'lodestar' figure ... is presumed to be the proper reasonable fee." *Timmons v. City of Tucson*, 171 Ariz. 350, 357, 830 P.2d 871, 878 (App.1991) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)).

of calculating reasonableness, and that a contingency agreement is not evidence of reasonableness or a basis for enhancing a reasonable rate under a fee-shifting statute. As Lesk points out, to justify a lodestar fee of $175,098.73 for 100 hours of work, the hourly rate would have to exceed $1,750. The Geller Group argues that: (1) the lodestar method is not applicable because the fee is based on a contingency fee agreement and that arrangement takes into account any risk in collecting on the debt, and (2) the purpose of the Lender's Rights clause in the note is to ensure that the lender would be made whole in the event of a default. If the court reduces the fee award to $15,000, the Geller Group would not be made whole because it would have to pay an additional $160,000 to its attorney.

¶ 8 We review the trial court's award of attorneys' fees for an abuse of discretion, but review issues of law *de novo,* including the authority to use a specific method to determine attorneys' fees. *Charles I. Friedman, P.C. v. Microsoft Corp.,* 213 Ariz. 344, 350, ¶ 17, 141 P.3d 824, 830 (App.2006).

¶ 9 The Geller Group requested an award of fees pursuant to A.R.S. § 12–341.01(A) and pursuant to the promissory note.[3] Because Lesk and the Geller Group contractually provided for the circumstances under which the Geller Group could recover attorneys' fees and the court awarded the exact amount of fees requested, it is that contractual provision which governs an award and not the statute. *See* A.R.S. § 12–341.01(A) ("This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees."); *Connor v. Cal-Az Props., Inc.,* 137 Ariz. 53, 55 668 P.2d 896, 898 (App.1983) (fee-shifting statute inapplicable given that parties contractually provided for attorneys' fees) (citing *Sweis v. Chatwin,* 120 Ariz. 249, 252, 585 P.2d 269, 272 (App.1978)); *cf. Jordan v. Burgbacher,* 180 Ariz. 221, 883 P.2d 458 (App.1994) ("*Sweis v. Chatwin* did not hold that any express contractual provision for

attorney's fees, however worded, 'preempts' A.R.S. [§ ] 12–341.01. That case merely recognized that A.R.S. [§ ] 12–341.01 is inapplicable by its terms if it effectively conflicts with an express contractual provision governing recovery of attorney's fees."); *Pioneer Roofing Co. v. Mardian Constr. Co.,* 152 Ariz. 455, 471, 733 P.2d 652, 668 (App.1986) (stating if contract has attorneys' fee provision for only one party, court will apply contract to determine fee award for that party but may award fees for other party under A.R.S. § 12–341.01(A)).

¶ 10 Generally, we will enforce a contract provision for attorneys' fees according to its terms. *First Fed. Sav. & Loan Ass'n of Phoenix v. Ram,* 135 Ariz. 178, 181, 659 P.2d 1323, 1326 (App.1982). When a party meets its burden to show a fee request is reasonable, a court may not simply exercise its discretion to deny attorneys' fees under a contractual provision. *McDowell Mountain,* 216 Ariz. at 269, 270, ¶¶ 14, 16, 165 P.3d at 670, 671. However, the court retains its discretion to limit any such award to a reasonable level. As we explained in *McDowell Mountain,* we will not enforce a contractual attorneys' fees provision that would result in an award of unreasonable attorneys' fees. *Id.* at 270, ¶ 16, 165 P.3d at 671. Rather, as the supreme court made clear, when the parties have agreed on an amount for attorneys' fees, such as a definite amount or a percentage of an amount due on a note, the stipulated amount will be enforced only "to the extent that it provides for a reasonable attorneys' fee for services actually rendered in accordance with its terms." *Elson Dev. Co. v. Ariz. Sav. & Loan Ass'n,* 99 Ariz. 217, 222–23, 407 P.2d 930, 934 (1965) (quoting *Citizens Nat'l Bank of Orange, Va. v. Waugh,* 78 F.2d 325, 331 (4th Cir.1935)). The agreed amount "is binding only to the extent that it is reasonable; however, where the services have been rendered, and the amount stipulated is not obviously excessive, the stipulation as to the amount should govern." *Id.* at 223, 407 P.2d at 934; *McDowell Mountain,* 216 Ariz. at 270, ¶ 17, 165 P.3d at

---

3. We interpret the promissory note's reference to an award of attorneys' fees to mean an award of *all* attorneys' fees.

671. If the reasonableness of the amount sought is challenged, the court must determine a reasonable amount. *Elson,* 99 Ariz. at 223, 407 P.2d at 934; *see also McDowell Mountain,* 216 Ariz. at 270, ¶ 18, 165 P.3d at 671 (while a fee shifting clause requires the nonprevailing party to pay the prevailing party's fees, *Elson* "imposes a caveat that such an agreement should not be enforced when the amount requested is 'obviously excessive.' ").

■■■■ ¶ 11 When the parties contractually agree that a party may recover all of its attorneys' fees, the court's discretion is more limited than when awarding "reasonable" fees. *McDowell Mountain,* 216 Ariz. at 270–71, ¶¶ 20–21, 165 P.3d at 671–72. Once the prevailing party makes a prima facie case that the fees requested are reasonable, the burden shifts to the party opposing the fee request to establish that the amount requested is clearly excessive. *Id.* at 271, ¶ 20, 165 P.3d at 672. If that party fails to make such a showing of unreasonableness, the prevailing party is entitled to full payment of the fees. *Id.* If, however, the party opposing the award shows that the otherwise prima facie reasonable fee request is excessive, the court has discretion to reduce the fees to a reasonable level. *See id.* at ¶ 22 ("On remand, the trial court may conduct a hearing to consider any evidence offered by [the appellee], and then enter an award to [the appellant] of all its attorneys' fees that were properly incurred in this matter except as to those fees the court expressly finds are clearly excessive.").

¶ 12 Thus, in *Elson,* the parties had contractually agreed that in the event of default, the borrower would pay in attorneys' fees a "reasonable sum (not less than three (3%) [percent] nor more than four (4%) [percent] of the amount found ... to be due and payable)." 99 Ariz. at 219, 407 P.2d at 932. The supreme court found the agreement to be valid, but concluded that the amount was not binding on the court and enforceable only to the extent that it was reasonable, concluding that where reasonableness was chal-

lenged, the court was required to consider evidence of reasonableness and determine the reasonable amount. *Id.* at 222–23, 407 P.2d at 934.

¶ 13 In *McDowell Mountain,* the parties had agreed that the prevailing party would recover "all attorney fees," and the prevailing party provided a detailed affidavit based on its billing records. 216 Ariz. at 267–68, ¶¶ 4, 7, 165 P.3d at 668–69. This Court, following *Elson,* noted that the contract provision was binding only to the extent that it was reasonable and the stipulated amount was not "obviously excessive." *Id.* at 270, ¶¶ 16–17, 165 P.3d at 671. We assumed that the fees *as documented* were facially reasonable, and held that the trial court had abused its discretion by halving the amount of fees requested without conducting a hearing. We noted that once a party requesting fees has made a prima facie showing of reasonableness, the burden shifts to the party challenging the fees to show the fees requested were excessive. We remanded for the court to consider evidence of the reasonableness of the fees and to enter an award to the prevailing party of all its fees, except those that the court expressly found clearly excessive. *Id.* at 271, ¶¶ 21–22, 165 P.3d at 672.

■■■■ ¶ 14 Here, the parties agreed that Lesk would pay attorneys' fees but, unlike in *Elson,* they did not agree on a specific "reasonable" amount.[4] The Lender's Rights provision requires Lesk to pay the amount expended, and therefore all fees expended, in collecting on the note. As in *McDowell Mountain,* the amount awarded is limited to a reasonable amount. Unlike in *McDowell Mountain,* the Geller Group has not made a prima facie showing of reasonableness. *See In re Conservatorship of Fallers,* 181 Ariz. 227, 229, 889 P.2d 20, 22 (App.1994) (court has discretion to determine a reasonable contingency fee pursuant to the standards established by Ariz. R. Sup.Ct. 42, ER ("E.R.") 1.5(a) and *In re Swartz,* 141 Ariz. 266, 272, 686 P.2d 1236, 1242 (1984)); *Crews v. Collins,* 140 Ariz. 80, 82, 680 P.2d 216, 218 (App.1984) (when underlying con-

4. The Geller Group's complaint acknowledged that it was entitled to collect "reasonable attor-

ney fees" under the promissory note.

tract provided for reasonable fees to lender and lender entered into contingency fee agreement with counsel, plaintiff must come forward with evidence of reasonableness of the ultimate fee). When dealing with a contingency agreement, the prevailing way to show reasonableness is through contemporaneous logs and not an offhand approximation of hours worked. *Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 194–95, 731 P.2d 84, 89–90 (1986) (supp. opinion).

¶ 15 The Geller Group did not present a detailed affidavit based on contemporaneous billing logs or present any other factors to support the reasonableness of its requested fees and on which the court could base an assumption of reasonableness. *See, e.g.,* E.R. 1.5(c), cmt. [3] (providing that even in a contingency fee context, the amount of the fee must be reasonable taking into consideration the factors for reasonable fees under E.R. 1.5(a)); *In re Swartz,* 141 Ariz. at 272, 686 P.2d at 1242. Nor did the Geller Group's agreement with counsel include an agreed hourly billing rate, although it specified that counsel's usual rate was $300 per hour.[5] *See Timmons v. City of Tucson,* 171 Ariz. 350, 357, 830 P.2d 871, 878 (App.1991) (reversing award based on contingency agreement pursuant to fee-shifting statute when there was no evidence to show fee was reasonable based on reasonable number of hours or reasonable rate or that enhancement was justified).

¶ 16 The Geller Group also failed to provide any evidence to support the requested amount of fees based on their alternative of hours expended by counsel. The affidavit submitted with the application for attorneys' fees provided that counsel did not keep a record of the time expended working on the case. In the event that fees were awarded based on time expended, he believed (1) the number of hours expended to have exceeded 100, (2) his normal hourly rate of $300 was reasonable considering counsel's ability and experience, and (3) the rate was in accord with the prevailing hourly rate for legal services in the community by lawyers similarly

situated. Assuming the $300 per hour rate is reasonable and the attorney for the Geller Group reasonably expended 100 hours on the case,[6] a reasonable fee would be $30,000, approximately one-sixth of the requested amount. Put another way, a requested fee amount of $175,098.73 for 100 hours of work would equate to an hourly rate of $1,750.99. Thus, the Geller Group has presented no evidence and there is nothing in the record that could support the conclusion that such an award in this type of case is reasonable, or that an enhancement is warranted. *Nolan v. Starlight Pines Homeowners Ass'n,* 216 Ariz. 482, 490–91, ¶¶ 37–38, 167 P.3d 1277, 1285–86 (App.2007) (application for fees must comply with requirements of *Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 188, 673 P.2d 927, 932 (App.1983), before burden shifts to party opposing fees to show amount requested is unreasonable); *McDowell Mountain,* 216 Ariz. at 270–71, ¶ 20, 165 P.3d at 671–72 (fee application that complied with *Schweiger* established a prima facie entitlement to fee in the amount requested).

¶ 17 The Geller Group also argued in the trial court that if the award is based on the time expended, the hourly rate should be multiplied to account for the risk involved in the contingency fee arrangement. We disagree. The Geller Group failed to offer any evidence that its hourly fee did not adequately compensate its attorneys "or that this was the 'rare' and 'exceptional' case in which an upward adjustment was warranted." *Lange v. Penn Mut. Life Ins. Co.,* 843 F.2d 1175, 1187 (9th Cir.1988) (quoting *Blum v. Stenson,* 465 U.S. 886, 899–901, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)); *see also Timmons,* 171 Ariz. at 357, 830 P.2d at 878 (lodestar figure based on hours expended and reasonable hourly rate is presumed to be the proper reasonable fee; enhancement "for the risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record." (citations and internal quotation marks

---

5. This rate was to have applied in the event the Geller Group terminated the representation.

6. Lesk questioned the number of hours counsel for the Geller Group claimed to work, arguing that his own attorneys spent a total of only 50.2 hours on the case.

omitted)); *London v. Green Acres Trust,* 159 Ariz. 136, 148, 765 P.2d 538, 550 (App.1988) ("[T]he risk borne by the attorneys is not the deciding consideration for enhancement of fees. The United States Supreme Court has made it very clear that the use of the lodestar method to enhance attorney's fees is the exception."); E.R. 1.5(a)(8) (providing that risk is already a factor incorporated in the determination of an attorney's fee).

¶ 18 The Geller Group further argues on appeal that the fee provision in the promissory note was intended to make the Geller Group whole, and to fail to award the fees requested would result in the Geller Group taking a loss because it would have to pay the balance of its counsel's fees. We disagree. That argument ignores that even when an attorney and client have agreed to a contingency fee, the attorney has a duty to review the fee at the conclusion of the representation to ensure that it would still be reasonable. *In re Swartz,* 141 Ariz. at 273, 686 P.2d at 1243.

¶ 19 We conclude that because the Geller Group failed to make a prima facie showing of reasonableness, the trial court erred in awarding the requested fees. We remand for the trial court to make a determination of the reasonable fees incurred by and to be awarded to the Geller Group based on the record which may be supplemented on remand.

## CONCLUSION

¶ 20 For the reasons stated above, we vacate the fee award and remand for further proceedings consistent with this opinion. We also award Lesk his reasonable attorneys' fees and taxable costs on appeal, *see Pioneer Roofing Co.,* 152 Ariz. at 475–76, 733 P.2d at 672–73, upon timely compliance with Arizona Rule of Civil Appellate Procedure 21(c).

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and PETER B. SWANN, Judge.